UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES MANSON,<br>    Plaintiff,<br><br>    v.<br><br>RICHARD FUREY, et al.,<br>    Defendants. | No. 3:19-cv-851 (SRU) |

## RULING ON MOTION FOR SUMMARY JUDGMENT

James Manson, proceeding *pro se* and currently incarcerated at Osborn Correctional Institution, commenced this action on June 3, 2019, alleging that various prison officials and physicians were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The remaining defendants, Health Services Administrator Richard Furey and Dr. Cary Freston (collectively, "Defendants"), now move for summary judgment. As set forth in their motion, Defendants contend that Manson has failed to adduce sufficient evidence to raise a triable issue regarding his deliberate indifference claim, and that they are entitled to qualified immunity in any event.

For the reasons that follow, the motion for summary judgment (doc. no. 30) is **granted**.

**I.    Standard of Review**

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party").  When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992).  If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249–50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247–48.  To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party."  *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

Although the court is required to read a self-represented party's papers liberally "to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## II. **Background**

A. <u>Facts</u>[1]

Helicobacter pylori ("HP") is a bacterium that colonizes parts of the intestinal tract. *See*

---

[1] The facts are in large part drawn from Defendants' Local Rule 56(a)1 Statement and their exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement, which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. D. Conn. L. Civ. R. 56(a)2(i). Each admission or denial must include a citation to an affidavit or other admissible evidence. D. Conn. L. R. 56(a)3. In addition, the opposing party must set forth any additional facts that he or she contends establish genuine issues of material fact. D. Conn. L. Civ. R. 56(a)2(ii).

Although Defendants informed Manson of that requirement, Manson has not submitted a Local Rule 56(a)2 Statement with his opposition. Because the complaint and amended complaint are verified, and because courts afford special solicitude to *pro se* litigants, I will consider the allegations in both complaints, as well as the exhibits appended to the original complaint and opposition, in reviewing the motion for summary judgment. To the extent Manson's allegations and exhibits do not controvert the material facts set forth in Defendants' Local Rule 56(a)(1) statement, Defendants' facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact.").

Defs.' Local Rule 56(a)1 Statement, Doc. No. 30-2, at ¶ 1.  An HP infection is usually painless and causes no disease, although it can lead to ulcerations in the stomach and duodenum.  *Id.* at ¶ 4; Aff., Doc. No. 4, at ¶ 22.  An HP infection is effectively treated with the use of a combination of antibiotics and antacid.  Doc. No. 30-2, at ¶ 5.

There are several tests to detect HP, the most common and non-invasive of which is a blood antibody test and a stool antigen test.  *Id.* at ¶ 6.  The blood antibody test detects antibodies to HP, which will be present in any individual who has, at any point, had an HP infection.  *Id.* at ¶ 7.  Because HP antibodies are present in the blood even after the infection has been cured, the antibody test does not identify a current infection.  *Id.* at ¶¶ 7–8.  The stool antigen test, by contrast, detects an active infection, with a negative stool test reflecting the absence of a present HP infection.  *Id.* at ¶ 10, 12.  The stool test is therefore used after treatment for an HP infection to confirm that the infection has been eradicated and cured.  *Id.* at ¶ 13.

Manson has a medical rating of 2, which indicates that he is generally in good health and is not presently suffering from any serious medical conditions.  *See* Defs.' Local Rule 56(a)1 Statement, Doc. No. 30-2, at ¶ 19, 20.  He received positive HP antibody test results on August 23, 2013, and again on October or November 2015, indicating exposure to HP.[2]  *Id.* at ¶ 14; Doc. No. 29, at 103.  He received antibiotic combination treatment for HP on November 24, 2013 and December 23, 2015.  *See* Doc. No. 30-2, at ¶ 15.  A stool antigen test was performed on October 18, 2016, which demonstrated that the HP was eradicated and that the infection was cured.  *Id.* at ¶ 16.

On January 28, 2019, Nigel Rodney, ARPN, saw Manson at sick call.  *Id.* at ¶ 21.  According to Nurse Rodney's notes, Manson asked to review his medical records regarding the

---

[2] Although Dr. Freston's affidavit and the Local Rule 56(a)(1) Statement provide that Manson received a positive HP test on October 13, 2015, the medical records suggest that he in fact received the test on November 13, 2015.  *Compare* Doc. No. 30-2, at ¶ 14, Doc. No. 30-4, at ¶ 29, *with* Doc. No. 29, at 103.

diagnosis and treatment of his HP infection in 2013. *Id.* at ¶ 22. At the time of the visit, Manson denied any abdominal issues and weighed 198 pounds, a gain of six pounds since his prior visit in October 2018. *Id.* at ¶¶ 22–24.

From March through July 2019, Manson submitted various sick call requests to address complaints other than abdominal pain. *See id.* at ¶¶ 25–39. In particular, on April 30, 2019, he received a dental cleaning and reported that he was experiencing no pain at the time. *See id.* at ¶ 30. On May 26, 2019, Manson was seen in response to his complaint of flu-like symptoms and again denied any pain, abdominal or otherwise. *Id.* at ¶¶ 34–36. At the time of that visit, Manson's weight was 191.2 pounds, which was close to his October 2018 weight of 192 pounds. *Id.* at ¶ 37. Moreover, on July 14 and July 25, 2019, after he filed the amended complaint in the instant suit, Manson was evaluated for complaints of ear pain. *Id.* at ¶ 40. He did not report abdominal pain during either visit. *Id.*

On September 30, 2019, Manson submitted a sick call request, specifically asking to be tested for HP in order to ensure that he did not have a recurring HP infection. *See id.* at ¶ 41. In that request, he elaborated that his stool was black, that he was losing weight, and that he had abdominal pain. *Id.* at ¶ 41; Doc. No. 29, at 8. When called to the medical unit two weeks later, on October 17, 2019, Manson refused examination, stating that he only wanted the lab tests conducted in order to make sure that the HP did not return. *Id.* at ¶ 42; Doc. No. 29, at 9. He denied any acute medical issues or abdominal pain. Doc. No. 30-2, at ¶ 44.

B. Procedural History

Manson filed the initial complaint on June 3, 2019, asserting that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and that they interfered with his right to petition for redress of grievances in violation of the First

Amendment. *See generally* Compl., Doc. No. 1. He specifically alleged his HP infection caused him "great pain and suffering," and "prevented sleep many times during the day and night, limited [his] recreation and work performance, and caused severe weight loss." *Id*. at 6, 7.

Appended to his complaint is an inmate request dated February 14, 2019, which reiterates that his infection has brought about "much pain and suffering" over the past six years. *Id*. at 11. Manson alleged that Furey did not respond to his request until after he filed an administrative remedy in 2019 and that Furey did not follow the procedures set forth in Administrative Directive 9.6. *See id*. at 6. Manson additionally asserts that he made multiple attempts to contact Dr. Freston but never received a response. *See id*. at 7.

On June 19, 2019, I issued an initial review order dismissing the First Amendment claim on the ground that prisoners do not have a constitutional entitlement to grievance procedures. *See* Doc. No. 9, at 5. I further dismissed the Eighth Amendment claim without prejudice to filing an amended complaint that addressed Manson's treatment for his HP infection and the involvement of Furey or Dr. Freston in the provision of that treatment. *Id*. at 6.

Manson filed an amended complaint on July 3, 2019, alleging in relevant part that Dr. Furey and Freston "were made aware of my very serious condition and suffering, through verbal and written communication" and that they denied him treatment and information regarding his illness. Am. Compl., Doc. No. 12, at 6. He elaborated that he submitted formal requests to both Furey and Dr. Freston that flagged that he was in "extreme pain" due to his infection. *Id*. at 6. He further asserted a medical staff member informed him that the infection can spread to other parts of the body, and can ultimately lead to cancer and death. *See id.* at 7.

Thereafter, I issued another initial review order, holding that the amended complaint stated a plausible Eighth Amendment claim against Freston and Dr. Furey and allowing the

claim to proceed.  *See* Doc. No. 13.

This motion for summary judgment followed.  *See* Doc. No. 30.

**III.     Discussion**

In their motion, Defendants contend that Manson has failed to raise a genuine issue of material fact regarding whether they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, and that they are protected by qualified immunity in any event.  *See* Doc. No. 30.  Manson counters that, although he was cured, the record evinces that he was not treated in a timely manner and that follow-up care and medical information were never provided.  *See* Doc. No. 31, at 1.  Manson also maintains that Furey was "made aware of the situation and did not follow protocol."  *Id.*

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs.  *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013).  Deliberate indifference to serious medical needs exists when an official "knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (cleaned up)).

The standard embodies both an objective and subjective element.  *See Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003).  To meet the objective element, the alleged deprivation of adequate medical care must be "sufficiently serious."  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citation omitted).  That inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

7

Where the defendants allegedly failed to provide any treatment for a prisoner's medical condition, the focus of the court's inquiry is whether the medical condition is sufficiently serious. *See id*. The Second Circuit has delineated several factors that are "highly relevant" to that question, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702–03 (2d Cir. 1998) (cleaned up). In addition, a sufficiently serious medical condition exists when, if left untreated or neglected for a long period of time, it could "result in further significant injury or the unnecessary and wanton infliction of pain." *See Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000) (citation omitted).

Where, on the other hand, the defendants allegedly provided medical treatment that was inadequate, the objective inquiry is narrower. *See Salahuddin*, 467 F.3d at 280. For instance, if the prisoner is receiving ongoing medical care and there was an "unreasonable delay or interruption in that treatment," the inquiry focuses on "the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id*. (citation omitted).

To meet the subjective element, the defendants must have been "subjectively reckless"—that is, they must have been aware that the prisoner faced a substantial risk to his or her health or safety and disregarded that risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Spavone*, 719 F.3d at 138. The defendants "need only be aware of the risk of harm, not intend harm," and "awareness may be proven 'from the very fact that the risk was obvious.'" *Spavone*, 719 F.3d at 138 (quoting *Farmer*, 511 U.S. at 842). Such recklessness entails more than mere negligence, *Salahuddin*, 467 F.3d at 279–80, and "an official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference, *see Farmer*, 511

8

U.S. at 838.  A disagreement over a choice of treatment provided also does not establish deliberate indifference.  *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015); *accord Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment.").

In this case, even when viewing the record in the light most favorable to Manson, Manson has not introduced any admissible evidence to raise a triable issue regarding whether he suffered from a sufficiently serious medical need or was deprived of adequate medical care.  In his complaint, Manson merely alleges that the HP infection caused him "great pain and suffering," and "prevented sleep many times during the day and night, limited [his] recreation and work performance, and caused severe weight loss."  Compl., Doc. No. 1, at 6, 7.  Those bare assertions, however, are not enough to carry Manson's burden of establishing a serious medical condition and thus cannot defeat summary judgment.  *See Martinez v. Aycock-West*, 164 F. Supp. 3d 502, 512 (S.D.N.Y. 2016) ("subjective complaints of pain are not sufficient to satisfy [the serious medical need] standard").

Moreover, Manson's allegation that a medical staff member informed him that an HP infection could lead to cancer or death constitutes inadmissible hearsay, and Manson offers no medical testimony or affidavit to support that claim.  The staff member's statement that an HP infection could have fatal consequences therefore cannot be considered for purposes of the motion.  *See Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment") (citation omitted); *see also Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) ("unsworn letters from physicians generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment").  Notably, that statement is at odds with Dr.

Freston's affidavit, which provides that, although an HP infection could lead to ulcerations in the stomach and duodenum, the infection is usually painless and causes no disease. *See* Doc. No. 30-4, at ¶¶ 21–22.

Further, although hearsay, Manson's unsworn statement in his September 30, 2019 sick call request that his stool was black, that he was losing weight, and that he had abdominal pain might be admissible under the exception for statements made for medical diagnosis or treatment. *See* FED. R. EVID. 803 (listing as an exception to the hearsay rule a statement that (a) "is made for—and is reasonably pertinent to—medical diagnosis;" and (b) "describes medical history; past or present symptoms or sensations; their inception; or their general cause"). Manson might also have a persuasive argument that Defendants waived any objection to the admissibility of those statements because the sick call request was introduced by Defendants themselves. *See Capobianco,* 422 F.3d at 55 (holding that an unsworn letter could be considered in support of a plaintiff's opposition to a summary judgment motion where the letter was submitted by the defendants). In *Capobianco*, however, the defendants relied on those letters in seeking summary judgment, whereas here, Manson's statement is cited by Defendants as background information. *Id*.

I need not resolve the question whether the statement in the September 30, 2019 sick call request is admissible at this juncture, because Manson has presented no evidence suggesting that the cited symptoms flowed from a condition that "could result in further significant injury or the unnecessary and wanton infliction of pain." *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003). Indeed, Manson cannot "simply rely on his own statements . . . to create a triable issue of fact as to his serious medical need." *Orr v. Ferrucci*, 2019 WL 5864503, at *10 (D. Conn. Nov. 8, 2019).

Even if the infection, or possible reinfection, could constitute a sufficiently serious medical need, Manson does not raise a genuine dispute regarding the adequacy of the treatment provided. The undisputed evidence establishes that Manson received antibiotic treatment for HP merely three months after his first positive HP antibody test in 2013, and one or two months after his second positive test in 2015. The antibiotic treatment was clearly effective; it is without dispute that he was thereafter cured of HP infection. Manson, for his part, presents no evidence from which a reasonable jury could find that the nature or timing of the treatment in response to the antibody tests was constitutionally inadequate.

Moreover, Manson has not proffered any evidence from which a reasonable jury could find that Defendants failed to adequately respond to his September 30, 2019 sick call request. The only relevant evidence in the record indicates that Manson was called down for a sick call approximately two weeks after making that request, and that he refused treatment, denied abdominal pain, and merely asked for another HP test so that he could assure himself that the infection had not resurfaced. Any refusal to provide the HP test, however, does not rise to the level of an Eighth Amendment violation. It is well-settled that mere disagreement over the proper treatment does not establish deliberate indifference, and that prisoners do not enjoy a constitutional entitlement to the medical treatment of their choice. *See Wright*, 622 F. App'x at 47; *Hill*, 657 F.3d at 123.

Finally, to the extent Manson takes issue with Defendants' failure to provide him with information about his illness, he proffers no allegations, much less evidence, that shed light on how that failure amounted to deliberate indifference to his serious medical needs. *See Nelson v. Deming*, 140 F. Supp. 3d 248, 262 (W.D.N.Y. 2015) ("To the extent Plaintiff alleges that Nurse Salotti violated his Eighth Amendment rights, her failure to provide him with medical records

11

plainly does not rise to the level of deliberate indifference.").

For all the foregoing reasons, Manson has failed to satisfy the objective element of the deliberate indifference test as a matter of law.

At any rate, Manson has not proffered any sworn statements or admissible evidence to raise a genuine dispute of material fact regarding whether Defendants knew of and disregarded an excessive risk to his health and safety. There is insufficient evidence from which a reasonable jury could find that Defendants were aware that Manson faced an excessive risk to his health or safety and, even if they were aware, there is nothing in the record to suggest that they failed to take reasonable measures to abate any risk of serious harm. As noted, no reasonable factfinder could find that the medical treatment that he received was by any means constitutionally deficient based on the record at hand. For those reasons, Manson has also failed to establish the subjective component of the deliberate indifference test as a matter of law.

In sum, when viewing the record in the light most favorable to Manson and drawing all reasonable inferences in his favor, there is no genuine dispute of material fact regarding whether Manson could satisfy either prong of the deliberate indifference test.[3] Summary judgment must therefore issue for Defendants.

## IV. Conclusion

The motion for summary judgment (doc. no. 30) is **granted**. The Clerk is directed to enter judgment and close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 29th day of March 2021.

---

[3] Because I grant summary judgment on that basis, I need not address Defendants' qualified immunity argument.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge